UNITED STATES DISTRICT COURT						ELECTRONIC PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               :
              -against-                                        :    MEMORANDUM
                                                               :    AND ORDER
                                                               :    10-CR-60 (JG)
MOHAMMED WALI ZAZI,                                            :
                                                               :
                      Defendant.                               :
---------------------------------------------------------------X

A P P E A R A N C E S:

    LORETTA E. LYNCH
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201
    By:   Andrew E. Goldsmith
        Berit W. Berger
        Melissa Marrus
        William M. Narus
        *Attorneys for the United States*
        *of America*

    COLSON & HARRIS LLP
        10 East 40th Street
        Suite 3307
        New York, New York 10016
    By:   Deborah A. Colson
        Justine A. Harris
        *Attorneys for Defendant Mohammed*
        *Wali Zazi*

JOHN GLEESON, United States District Judge:

        Defendant Mohammed Wali Zazi awaits trial on charges arising out of his alleged obstruction of the government's investigation into a plot by his son, Najibullah Zazi, and several

co-conspirators to detonate improvised explosive devices in the New York City subway system.[1]
The government contends that, in the days preceding Najibullah's arrest in Colorado on
September 19, 2009, Zazi[2] conspired with others to destroy evidence of Najibullah's
bomb-making activities, in fact destroyed that evidence, and made false statements to agents of
the Federal Bureau of Investigation regarding the nature of his interactions with a Queens imam
and the adoption status of his biological nephew, Amanullah Zazi. (Superseding Indictment, dkt.
#42.)

Before me is the government's motion for a protective order pursuant to both the
Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3, §§ 1-16, and Federal Rule of
Criminal Procedure 16(d)(1). (*See* Notice, dkt. #54.) In its classified submission, the
government seeks two forms of discrete relief. First, it requests that I authorize the substitution
of classified and unclassified summaries for classified source material which the government
believes may contain exculpatory and impeachment evidence that must be disclosed in
accordance with *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150
(1972), and their progeny. The summaries would then be provided to defense counsel, although
the classified summaries would remain unavailable to defendant personally. Second, the
government requests that I issue an order confirming its conclusion that it has no obligation
under federal law to produce certain classified materials to the defense.

On June 17, 2011, in the government's presence, I reviewed the subject materials
*in camera*. Based on that review, and for the reasons set forth below – though my "discussion of

---

[1] In February 2010, before the Honorable Raymond J. Dearie, Najibullah pleaded guilty to conspiring to use weapons of mass destruction, conspiring to commit murder abroad, and providing material support to a foreign terrorist organization. In April 2010, Najibullah's co-conspirator, Zarein Ahmedzay, entered a similar plea before Chief Magistrate Judge Steven M. Gold. Both are scheduled to be sentenced later this year. Alleged co-conspirator Adis Medujanin faces trial on the same charges, and others, early next year.

[2] Unless otherwise specified, "Zazi" as used in this Memorandum and Order refers to the defendant, Mohammed Wali Zazi.

the classified information is necessarily circumspect," *United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010) – I now grant the motion in its entirety.

A.  *CIPA Standards*

The purposes behind CIPA and the rules governing motions for Section 4 protective orders are by now thoroughly catalogued in judicial opinions issued within the Second Circuit and elsewhere. I present them briefly here.

"CIPA establishes rules for the management of criminal cases involving classified information." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 115 (2d Cir. 2008). "Its animating purpose is to harmonize a [criminal] defendant's right to obtain and present exculpatory material with the government's need to withhold information from discovery when disclosure would be inimical to national security." *Id.* at 115-16 (internal quotation marks and citations omitted). CIPA "creates no new rights of or limits on discovery of . . . classified information," *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989), nor does it alter existing rules regarding the admissibility of evidence. Rather, it overlays the framework appearing in Federal Rule of Criminal Procedure 16, which itself "authorizes district courts to restrict discovery of evidence in the interest of national security." *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008) (citing Fed. R. Crim. P. 16(d)(1) & advisory committee's note to 1966 amendment); *see also United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc) (labeling CIPA "merely a procedural tool requiring a pretrial court ruling on the admissibility of classified information").

The relevant CIPA provision provides that

> [t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such

3

> classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

CIPA § 4. Construing this section, the Second Circuit in *Aref* enunciated a three-part test for determining whether classified material should be subject to disclosure to a criminal defendant. "[T]he district court must first decide whether the classified information the Government possesses is discoverable."[3] *Aref*, 533 F.3d at 80. "If it is, the district court must then determine whether the state-secrets privilege applies," which requires the separate findings that "(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id.* (internal quotation marks omitted). Finally, "[i]f the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, *i.e.*, useful 'to counter the government's case or to bolster a defense.'" *Id.* (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)).

"'[I]n assessing the materiality of withheld information,'" a court must "'consider[] not only the logical relationship between the information and the issues in the case, but also the importance of the information in light of the evidence as a whole.'" *In re Terrorist Bombings*, 552 F.3d at 125 (quoting *Stevens*, 985 F.2d at 1180). The principle that privileged classified information, to be discoverable, be "helpful" to a defendant equally "applies to

---

[3] Embedded within this determination is the threshold requirement that the subject materials be classified. "CIPA defines 'classified information' as 'information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security.'" *Aref*, 533 F.3d at 78 n.2 (quoting CIPA § 1(a)). The government's submission in this case, the majority of which is labeled either "Secret" or "Top Secret" due to its incorporation of classified material, includes declarations by the appropriate government officials "adequately describ[ing] the reasons for the information's classification and the harm that would result from disclosure." *United States v. Juma Khan*, 2010 WL 330241, at *1 (S.D.N.Y. 2010). This more than suffices; as Section 1 of CIPA recognizes, classification is an executive decision, one that courts are ill-suited to second-guess. *See, e.g., United States v. Aref*, 2007 WL 603510, at *1 (N.D.N.Y. 2007) (reasoning that so "becom[ing] the arbiter of this Country's national security . . . clearly is not the Court's function in a CIPA case"), *aff'd*, 533 F.3d 72.

sub-elements of individual documents." *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998) ("[I]f some portion or aspect of a document is classified, a defendant is entitled to receive it only if it may be helpful to his defense.").

B.   *Suitability of* Ex Parte *Proceedings*

In a letter filed prior to the court-scheduled deadline for the government's CIPA submission, defense counsel challenges the *ex parte* nature of the proceedings absent "exceptional circumstances," which counsel argues are lacking here. (Dkt. #53, at 2.) The Second Circuit, however, recently rejected this argument in another case and, in doing so, reaffirmed *ex parte* consideration of CIPA motions as the rule. *See Abu-Jihaad*, 630 F.3d at 143 ("In such circumstances, a district court's decision to conduct *ex parte* hearings manifests no abuse of discretion."); *accord United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *Rezaq*, 134 F.3d at 1143. In light of that decision, and of the statutory language that governs CIPA proceedings, I conclude that an *ex parte* presentation is the preferable course in ruling on the government's motion.[4]

Defense counsel "does not dispute that Section 4 of CIPA and Rule 16(d)(1) of the Federal Rules of Criminal Procedure both authorize *ex parte* proceedings." *Abu-Jihaad*, 630 F.3d at 143. Section 4 provides that a "court may permit the United States to make a request for [a protective order] in the form of a written statement to be inspected by the court alone."

---

[4]   I have considered the possibility of directing the government to create a redacted and unclassified version of its submission for consumption by defense counsel and the public. I conclude, however, that deleting all references to non-discoverable classified information would make the government's submission incoherent and, thus, functionally useless to defense counsel. *See United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982) (affirming the inutility of ordering an adversary hearing in which defense counsel, without access to classified information, "would be punching at shadows"). No less restrictive alternative to closure and sealing will protect the government's interest in preventing the unauthorized dissemination of classified information. *See Press-Enters. Co. v. Sup. Ct.,* 464 U.S. 501, 510 (1984) ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to preserve that interest."). Hence, the government's entire submission and all accompanying records will remain sealed to facilitate possible appellate review. *See* CIPA § 4.

CIPA § 4. Likewise, Rule 16(d)(1), which authorizes protective orders "for good cause," states that a "court may permit a party to show good cause by a written statement that the court will inspect ex parte." Fed. R. Crim. P. 16(d)(1). Zazi's lawyers both possess top secret security clearances, which afford them access to the classified summaries the government will shortly provide, but those clearances do not mandate an adversary hearing or access to immaterial classified information for which counsel has no legitimate need. *See* Exec. Order No. 13,526, 75 Fed. Reg. 707, 720 (Dec. 29, 2009) ("A person may have access to classified information provided that . . . the person has a need-to-know the information."); *United States v. Libby*, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses.").

As the Second Circuit has observed, "where the government moves to withhold classified information from the defense, 'an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.'" *Abu-Jihaad*, 630 F.3d at 143 (quoting *Aref*, 533 F.3d at 81). Indeed, affording defense counsel the opportunity "to litigate whether a particular substitution or redaction is necessary would [allow] the defendant . . . to determine exactly what the government is attempting to withhold during such proceedings." *Libby*, 429 F. Supp. 2d at 25. With respect to the government's request to delete irrelevant classified materials from discovery, an adversary proceeding would be particularly anomalous, as it would provide defense counsel access to sensitive information to which, if the government is correct, they are not entitled under any theory. As mentioned above, CIPA does not enlarge the government's discovery obligations in such an unenvisioned way. Rather, Congress enacted CIPA to "'restrict[] the discovery of classified information in a way that does not impair the defendant's

6

right to a fair trial.'" *Abu-Jihaad*, 630 F.3d at 140 (alteration in original) (quoting *Aref*, 533 F.3d at 78).

Alternatively, Zazi's lawyers offer to apprise me of their theory of the case, *ex parte*, so that I may better understand what kind of material might be "helpful" to the defense. I decline that offer because I am confident the presentation is unnecessary. The facts at issue are not complex and the basic contours of both the underlying plot and Zazi's alleged obstruction have been well established. My consideration of the source material and the government's arguments, as described below, convinces me that the material it seeks to withhold would not assist the defense in any meaningful respect.

C.  *Proposed Substitution of Discoverable Materials*

The government requests authorization to substitute classified and unclassified summaries for classified source materials whose contents the government believes are potentially exculpatory or useful to impeach government witnesses. In Part V of its submission, the government proposes the substitution of two classified summaries for a larger amount of source material.[5] In Part VI, it proposes the substitution of a concise summary for a single unit of similarly terse source material. I grant the government's motion in both respects.

Authorization to substitute evidence under CIPA is warranted if the court "finds that the [substituted] statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." CIPA § 6(c); *see Abu-Jihaad*, 630 F.3d at 140 (affirming the district court's discretion under Section 4 to decide "whether unclassified summaries or admissions are properly substituted for

---

[5] Each of the government's proposed summaries includes footnotes which serve as cross-references between the summaries and the indexed set of source materials submitted for *in camera* review. These cross-references obviate the need to create "a detailed comparison of original discoverable documents with the [classified and] unclassified summaries." *Abu-Jihaad*, 630 F.3d at 142.

7

classified information"). The touchstone is whether the substitution prejudices the defendant's right to a fair trial. *See* S. Rep. No. 96-823, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4298.

Adhering to the procedures in *Aref*, I find that the source material which the government seeks to summarize contains discoverable information. To its credit, the government has adopted a generous approach to determining whether material could be considered exculpatory or impeaching given the facts alleged and the offenses charged in the indictment.

I also find that the state-secrets privilege applies to the source material in question. It is plain to me that production of this information in its original form may expose "matters which, in the interest of national security, should not be divulged," and thus I endorse without hesitation the contention that disclosure "would be inimical to national security." *Aref*, 533 F.3d at 79 (internal quotation marks omitted). As the government's submission illustrates, moreover, the privilege in each case is lodged by the head of the department with control over the matter, after actual personal consideration by that officer.

Finally, I conclude that the withheld information is not helpful to the defense and, consequently, that substitution of the classified and unclassified summaries does not impinge upon Zazi's right to a fair trial. The government submits specific reasons why the information it seeks to withhold is neither helpful nor even relevant to the defense, and I agree. I cannot conceive of a use to which Zazi or his counsel might put this information. *See Abu-Jihaad*, 630 F.3d at 142 n.35 ("[C]lassified information is not discoverable on a mere showing of theoretical relevance . . . ." (quoting *Yunis*, 867 F.2d at 623)). By any measure, Zazi could not use the withheld material "to bolster his defense or to counter the government's case," nor would

the information aid counsel in "formulat[ing] a more effective defense strategy." *Stevens*, 985 F.2d at 1180.

My review confirms that the government has offered faithful and often verbatim summaries that disclose, in a streamlined fashion, all arguably relevant portions of the original material. *See Rezaq*, 134 F.3d at 1143 (affirming the propriety of a district court's authorizing substitutions under Section 4 where "[n]o information was omitted from the substitutions that might have been helpful to [the] defense"). In my view, the substituted documents retain whatever potential exculpatory or impeachment value the source materials may possess. I have ordered the government to make a single, largely ministerial correction to one of the summaries, the need for which the government itself initially brought to my attention. Provision of the summaries to Zazi's counsel satisfies the government's discovery obligations in a manner that appropriately protects national security.

D.  *Proposed Deletion of Irrelevant Materials from Discovery*

The government additionally requests that I issue an order confirming that certain classified information is not discoverable. In Part VII of its submission, the government describes this information along with its proposed rationale for deleting these materials from discovery. The government contends that a small subset of the materials implicates potential national security concerns. I need not reach that issue, because I agree that the information at issue in Part VII is not discoverable, whether under Rule 16, *Brady*, *Giglio*, or statute.

I lack the resources to test the government's assertions by reviewing all of the source material it seeks to withhold. I have reviewed work product of the government lawyers describing much of the information in detail,[6] but to a substantial extent I have taken the

---

[6] Specifically, I accepted the government's offer to produce a tranche of materials for *ex parte*, *in camera* inspection. Extrapolating from this sample, I comfortably conclude that the information at issue in Part VII

9

government's representations concerning the materials at face value. Indeed, the government requests, and I will provide, an order confirming that information falling within certain specified categories is not discoverable; whether the information possessed by the government actually fits within these categories is not susceptible to personal confirmation by me. Nonetheless, I am confident that the government has undertaken its obligation diligently and in good faith, and with an apparent determination to err, if at all, in favor of disclosure.

The government asserts that all arguably relevant evidence uncovered to date has been declassified where necessary and produced to defendant. Thus, it now invokes CIPA to deal with the remainder. The overwhelming majority of this information would be irrelevant to any conceivable defense that might be advanced at the forthcoming trial. "Nothing in the[se] classified documents in fact goes to the innocence of the defendant *vel non*, impeaches any evidence of guilt, or makes more or less probable any fact at issue in establishing any defense to the charges." *Yunis*, 867 F.2d at 624. Likewise, nothing in Rule 16(a)(1) mandates the material's disclosure. Accordingly, Zazi's counsel has no legitimate need to access the information.

Because I conclude that the information described in Part VII of the government's submission is not discoverable, *see Aref*, 533 F.3d at 80, Zazi does "not stand in a worse position, because of the fact that classified information is involved, than he would" be otherwise. S. Rep. No. 96-823, at 9. Accordingly, I confirm that the government need not produce this material to the defense.

---

of the government's submission is "not relevant to the defense case" and does not deprive defendant of "access to any evidence that [he is] entitled to consult under the rules of criminal discovery." *In re Terrorist Bombings*, 552 F.3d at 125.

E. *Conclusion*

As discussed above, I grant in its entirety the government's motion for a protective order pursuant to Section 4 of CIPA. With the single correction previously discussed, the government must immediately produce to defense counsel the classified and unclassified summaries described in parts V and VI of its submission, respectively. The classified summaries and the information they contain may not be shared with defendant, who does not possess the appropriate clearance to review such materials. *See* CIPA § 3; *In re Terrorist Bombings*, 552 F.3d at 126-27.

So ordered.

s/
JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
June 24, 2011